UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JIM HENRY BALL, JR., } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 2:16-cv-01425-RDP |
| } | |
| R. MCCOULLOUGH, et al., } | |
| } | |
| Defendants. } | |

## MEMORANDUM OPINION

This case is before the court on the Motion to Dismiss Second Amended Complaint and Incorporated Memorandum of Law filed by Defendant Dr. Karen E. Callahan ("Defendant Callahan" or "Dr. Callahan") on July 5, 2017 (Doc. # 78), the Motion to Dismiss Third Amended Complaint filed by Defendant W. Fowler ("Defendant Fowler") on August 25, 2017 (Doc. # 106), and the Motion to Dismiss Third Amended Complaint filed by Defendant Callahan on August 25, 2017 (Doc. # 108). The parties have fully briefed Defendant Callahan's Motion to Dismiss Second Amended Complaint (Docs. # 78, 91, 107) and Defendant Fowler's Motion to Dismiss Third Amended Complaint (Docs. # 106, 113, 114). Despite the court's Order (Doc. # 111) that Plaintiff file a responsive brief to Defendant Callahan's Motion to Dismiss Third Amended Complaint (Doc. # 108) on or before September 11, 2017, Plaintiff has not responded to this Motion (Doc. # 108).

### I. Procedural History

Plaintiff filed this action in the Circuit Court of Montgomery County on May 20, 2016. (Docs. # 1-1, 1-4, 1-5, 1-6, 1-7, 1-8, 1-9, 1-16, 1-17, 1-18, 1-19, 1-20, 1-21, 1-22). On July 7, 2016, Defendants removed this case to the Middle District of Alabama. (Doc. # 1-1). The case

was transferred to the Northern District of Alabama on August 29, 2016. (Doc. # 1). Plaintiff filed an Amended Complaint on January 9, 2017. (Doc. # 43).

After the court appointed an attorney to represent Plaintiff "for the limited purpose of drafting a second amended complaint," Plaintiff filed the Second Amended Complaint on June 19, 2017. (Docs. # 73, 74). The claims in the Second Amended Complaint relate to (1) Plaintiff's confinement in the Birmingham City Jail from November 2014 through February 2015 and (2) Plaintiff's treatment by Defendant Callahan while at Grandview Medical Center ("Grandview") in January 2015. (Doc. # 74). On June 22, 2017, Defendants (including Defendant Fowler) who were identified in the Complaint and First Amended Complaint but were not included in the Second Amended Complaint were dismissed from the proceeding. (Doc. # 76). After the court gave Plaintiff leave to amend the Second Amended Complaint (Doc. # 88), Plaintiff filed a Third Amendment to Complaint, which added claims against Defendant Fowler. (Doc. # 97).

## II. Relevant Facts

"A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merit of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true." *Mays v. U.S. Postal Serv.*, 928 F. Supp. 1552, 1557-58 (M.D. Ala. 1996). Thus, for the purpose of resolving Defendant Callahan's Motions (Doc. # 78, 108) and Defendant Fowler's Motion (Doc. # 106), the court treats the facts alleged in the Second Amended Complaint (Doc. # 74) and Third Amendment to Complaint (Doc. # 97) as true. The court also liberally construes documents filed *pro se*,[1] such as Plaintiff's Third

---

[1] Although Plaintiff is proceeding in this case *pro se*, the court appointed an attorney to represent Plaintiff for the limited purpose of drafting Plaintiff's Second Amended Complaint (Doc. # 74). Therefore, Plaintiff's Second Amended Complaint (Doc. # 74) is not subject to "less stringent standards," but Plaintiff's other filings are entitled to a more liberal standard. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Amendment to Complaint (Doc. # 97). *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The underlying facts of Plaintiff's claims -- which are related to (A) his alleged denial of services at Cooper Green Mercy Health Services ("Cooper Green"), (B) his treatment in and the conditions of Birmingham City Jail, and (C) his medical care at Grandview -- are outlined below.

### A. Plaintiff's Claims against Defendant Fowler

At some point between May 13, 2014 and February 2015,[2] a Birmingham City Jail officer escorted Plaintiff to Cooper Green. (Doc. # 97 at p. 2). Plaintiff told Defendant Fowler, a medical clerk at Cooper Green, that he was experiencing excruciating pain; however, Defendant Fowler allegedly denied Plaintiff access to Cooper Green's services. (*Id.*). Plaintiff claims this denial of services exacerbated his condition. (*Id.*).

In Count 10 of his Third Amendment to Complaint, Plaintiff alleges that Defendant Fowler had a legal and contractual duty to allow Plaintiff access to Cooper Green's services, Defendant Fowler breached her duty to allow Plaintiff access to these services, and Defendant Fowler's breach was wanton conduct that was the proximate cause of Plaintiff's physical and psychiatrist injuries. (*Id.* at p. 4). Liberally construed, Plaintiff's *pro se* Third Amendment purports to assert both a § 1983 claim and a medical malpractice claim against Defendant Fowler. (Doc. # 97 at p. 3-4). Plaintiff requests compensatory and punitive damages along with his costs under 42 U.S.C. § 1988. (*Id.* at p. 4-5).

---

[2] Plaintiff's Third Amendment to Complaint does not specify the date the event giving rise to his claims against Defendant Fowler occurred. (Doc. # 97). Plaintiff's Third Amendment to Complaint lays out the dates related to Defendant Fowler's alleged conduct as follows:
> 1. That, on or around 5-13-14 thru Feb. 2015, Plaintiff's torturous maltreatment began at the B'ham City Jail and Cooper Green Mercy Health Services;
> 2. That, on or around said date, a B'ham City Jail Officer escorted Plaintiff to said Health Services for his appointment for pain management treatment . . . .
> 3. That, at said time and place, Defendant Fowler knew of Plaintiff's excruciating pain (Plaintiff told her so at this time) yet she denied him access to said facility's services . . . .

(Doc. # 74 at p. 2). Although it is likely that Plaintiff intended to state that the events giving rise to his claim against Defendant Fowler occurred on May 13, 2014 (as Defendant Fowler assumes in her Motion to Dismiss (Doc. # 106)), Plaintiff does not pinpoint this date with adequate clarity for the court to make such an assumption.

3

### B. Plaintiff's Claims against Defendants City of Birmingham, Davis, Singleton, Taylor, Campbell, Nunn, Sheffield, Debra, Rogers, T. Brown, Moten, Drake, Bradford, and Daniels

On November 19, 2014, Plaintiff was arrested on outstanding warrants and taken to Birmingham City Jail to await trial. (Doc. # 74 at ¶¶ 2, 16). Plaintiff told personnel at the jail that he was suicidal and homicidal, and, from November 20, 2014 through January 15, 2015,[3] Plaintiff was held in a suicide watch strip cell. (*Id.* at ¶¶ 17-19). On January 19, 2015, Plaintiff was placed in punitive segregation. (*Id.* at ¶ 31). Shortly thereafter, he was moved to the medical cell block where he remained until February 20, 2015. (*Id.*). The claims against Defendants City of Birmingham, Davis, Singleton, Taylor, Campbell, Nunn, Sheffield, Debra, Rogers, T. Brown, Moten, Drake, Bradford, and Daniels (collectively, "the Birmingham City Jail defendants") relate to the conditions of and events occurring within Birmingham City Jail. (*See id.* at ¶¶ 34-45, 49-53).

### C. Plaintiff's Claims against Defendant Callahan

On January 5, 2015, Plaintiff was moved from the Birmingham City Jail to the psychiatric unit at Grandview Medical Center ("Grandview"), where Dr. Callahan served as Plaintiff's treating physician. (*Id.* at ¶¶ 28-29). Plaintiff's January 6, 2015 laboratory tests indicated that Plaintiff had a low blood count; however, Dr. Callahan "did not make any effort to determine the cause or treat" these results. (*Id.* at ¶¶ 30, 47). On January 19, 2017, Plaintiff was released from Grandview and returned to the Birmingham City Jail. (*Id.* at ¶ 31). Once Plaintiff was released from the jail in February 2015, he sought further medical attention, and a

---

[3] The court recognizes that some dates within Plaintiff's Second Amended Complaint (Doc. # 74) do not coincide. For instance, Plaintiff alleges that he was held in a suicide watch strip cell from November 20, 2014 through January 15, 2015 but also alleges that he was being treated at the psychiatric unit at Grandview from January 5, 2015 through January 19, 2015. (Doc. # 74 at ¶¶ 19, 28, 31). In addition, Plaintiff alleges that he remained in Birmingham City Jail until February 20, 2015 but also alleges that he was released from the jail in early February 2015. (*Id.* at 31, 33).

colonoscopy revealed that Plaintiff was bleeding internally. (*Id.* at ¶ 33). Surgery was required to correct this medical issue. (*Id.*).

Plaintiff alleges that (1) Dr. Callahan treated Plaintiff while he was in the custody of the City of Birmingham, (2) he was a patient of Dr. Callahan's pursuant to an order of commitment from the Jefferson County Probate Court, and (3) therefore, Dr. Callahan was acting under the color of state law. (*Id.* at ¶ 15). Under Count Five of his Second Amended Complaint, Plaintiff contends that Defendant Callahan was deliberately indifferent to Plaintiff's physical medical needs and requests compensatory and punitive damages, costs and attorney's fees pursuant to 42 U.S.C. § 1988, and any further relief to which he is entitled.[4] (*Id.* at ¶¶ 47-48). In Count Nine of his Second Amended Complaint, Plaintiff asserts that Dr. Callahan had a legal and contractual duty to provide Plaintiff with reasonable medical care; she breached this duty; this breach was the proximate cause of Plaintiff's physical injuries and damages; and this breach constituted negligent or wanton conduct that was below the standard of care for similarly situated medical providers.[5] (*Id.* at ¶¶ 53-55). Plaintiff seeks compensatory and punitive damages from Defendant Callahan along with his costs. (*Id.* at p. 16).

## III. Misjoinder of Defendants

The court first addresses whether Plaintiff has misjoined the claims among the Defendants and, if so, what the appropriate remedy is for his misjoinder. A plaintiff may join claims against multiple defendants if (1) the claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" and (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). The central purpose of Rule 20 is to promote judicial efficiency and expedite the resolution of claims, thereby

---

[4] Hereinafter referred to as the deliberate indifference or § 1983 claim.
[5] Hereinafter referred to as the medical malpractice claim.

eliminating unnecessary, additional lawsuits. *Alexander v. Fulton Cty.*, 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003).

Rule 21 provides that "the court may at any time, on just terms, add or drop a party," and "[t]he court may also sever any claim against a party." Fed. R. Civ. P. 21. Rule 42(b) also allows for separate trials where the efficiency of a consolidated trial is outweighed by its potential prejudice. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996). Thus, the court "has broad discretion to join parties or not." *Swan v. Ray*, 293 F.3d 1252, 1253 (11th Cir. 2002).

In determining whether claims are properly joined, courts in the Eleventh Circuit apply the logical relationship test. *Smith v. Trans-Siberian Orchestra*, 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010). "Under this test, a logical relationship exists if the claims rest on the same set of facts or the facts, on which one claim rests, activate additional legal rights supporting the other claim." *Id.* (citing *Republic Health Corp. v. Lifemark Hosps. of Fla., Inc.*, 755 F.2d 1453, 1455 (11th Cir.1985). "'Whether severance would facilitate . . . judicial economy is among the factors a court may examine while determining whether to sever [ ] claims.'" *Formosa v. Lowe's Home Centers, Inc.*, 806 F. Supp. 2d 1181, 1187 (N.D. Ala. 2011) (quoting *Tillis v. Cameron*, 2007 WL 2806770, at *5 (M.D. Ala. Sept. 25, 2007)).

When a court finds misjoinder, it can order one of two remedies: (1) dropping parties on such terms as are just, or (2) severing the plaintiff's claims and proceeding with them separately. *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006). The statute of limitations is not tolled when a court "drops" a defendant under Rule 21; however, when the court severs a claim, the suit simply continues against the severed defendant in another guise. *Id.* Because the choice of remedy can affect a plaintiff's ability to obtain relief, "a court must analyze the consequences of

6

a dismissal on a claimant's ability to meet the statute of limitations prior to choosing dismissal over severance." *Id.* at 846.

Here, because of the complex nature of medical malpractice claims and the absence of factual overlap between Plaintiff's claims against Defendant Callahan and against the other defendants, allowing the claims against Defendant Callahan and the other defendants to proceed as one case would not facilitate judicial economy. *See, e.g.*, *Stojcevski v. Cnty. of Macomb*, 143 F. Supp. 3d 675, 683 (E.D. Mich. 2015) (holding that claims related to the same jail during the same time period required "entirely different proof" and were, therefore, misjoined); *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 171 (S.D.N.Y. 2009) (noting that a joint trial would lead to confusion of the jury when claims against various defendants "involve separate witnesses, different evidence, and different legal theories and defenses"). The fact that Plaintiff remained under the custody of the City of Birmingham (Doc. # 74 at ¶ 15) when Defendant Callahan treated him at Grandview -- a private hospital not associated with the jail -- does not create a logical relationship with Plaintiff's claims against the Birmingham City Jail defendants. *See Smith*, 728 F. Supp. 2d at 1319. Furthermore, Plaintiff has not alleged a conspiracy linking Defendant Callahan's alleged conduct to any other defendants in this case. Thus, the court finds that Defendant Callahan was improperly joined in this action. After taking into account potential statute of limitations concerns related to Plaintiff's claims, the court finds that severance is appropriate for this improperly joined defendant. *See DirecTV, Inc.*, 467 F.3d at 846.

Conversely, Plaintiff's claims against Defendant Fowler may constitute one series of events. (Doc. # 97 at p. 2). Liberally construed, Plaintiff's *pro se* amendment alleges joint "torturous maltreatment" from both the Birmingham City Jail and Cooper Green (a Jefferson County facility). (*Id.* at p. 2). Based on Plaintiff's Third Amendment to Complaint (Doc. # 97),

it is plausible that a jail officer brought Plaintiff to Cooper Green as a pretrial detainee to receive required medical treatment and that Defendant Fowler, acting under the color of law, denied Plaintiff access to such medical treatment. In short, the court does not currently have enough information based on the pleadings to find misjoinder of Plaintiff's claims against Defendant Fowler. As such, Plaintiff's claims against Defendant Fowler and the Birmingham City Jail defendants are to proceed in this action, and his claims against Defendant Callahan are to proceed in a separate action. The court may take this matter up again if the record is more developed and establishes misjoinder. The court now turns to Defendants' motions to dismiss.

## IV. Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). Additionally, courts must liberally construe documents filed *pro se*. *Erickson*, 551 U.S. at 94.

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x. 136, 138 (11th Cir. 2011) (unpublished) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

## V. Analysis of Defendant Callahan's Motion to Dismiss

In requesting dismissal of the 42 U.S.C. § 1983 claim against her, Defendant Callahan argues that she is not a state actor and, therefore, Plaintiff's claim for deliberate indifference is due to be dismissed. (Doc. # 78 at p. 4-6). Defendant Callahan also maintains that this claim should be dismissed for failure to state a claim upon which relief can be granted. (*Id.* at p. 6-10). Regarding Plaintiff's state medical malpractice claim, Defendant Callahan contends that this claim is due to be dismissed for failure to state a claim upon which relief can be granted pursuant to Alabama Code § 6-5-551. (*Id.* at p. 2-4). The court addresses each of these arguments below.

### A. Plaintiff Has Not Adequately Pled a Deliberate Indifference Claim

In order to state a claim for relief under § 1983, a plaintiff must allege that the defendant (1) acted under color of state law (2) to deprive the plaintiff of a right secured under the United States Constitution or federal law. *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

#### 1. Plaintiff Has Not Plausibly Alleged that Dr. Callahan Was a State Actor

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). The Supreme Court has established that "if a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, 'that conduct [is] also action under color of state law and will support a suit under §1983.'" *Id.* (citations omitted; changes in original).

In certain circumstances, a private party may be considered a state actor for purposes of § 1983. *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992); *see also Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 938-39 (1982). The Eleventh Circuit has directed district courts to determine whether one of three conditions is met in order for a private party, such as Dr. Callahan, to be deemed a state actor:

> (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("State compulsion test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or (3) "the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise[]" ("nexus/joint action test").

*Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (quoting *NBC, Inc. v. Commns. Workers of Am.*, 860 F.2d 1022, 1026-27 (11th Cir. 1988)).

Plaintiff alleges that, because (1) Dr. Callahan treated him pursuant to an order of commitment from the probate court and (2) he was in custody of the City of Birmingham when Dr. Callahan treated him, Dr. Callahan was a state actor. (Doc. # 74 at ¶ 15). Neither of these contentions presents plausible allegations from which the court can find that Dr. Callahan was acting under color of state law when she treated Plaintiff. First, the Eleventh Circuit has established that private persons who act pursuant to an order of commitment cannot be held liable under § 1983. *See Harvey*, 949 F.2d at 1133. Plaintiff's Second Amended Complaint alleges that that Dr. Callahan was "employed at Grandview Medical Center" and that Plaintiff was "a patient pursuant to an order of commitment from the Jefferson County Probate Court." (Doc. # 74 at ¶ 15). Therefore, under the facts in the complaint, Dr. Callahan was a private physician acting pursuant to an order of commitment and cannot be held liable under § 1983. *See Harvey*, 949 F.2d at 1133.

Second, Plaintiff's contention that "Dr. Callahan was acting under color of state law" because Plaintiff "was still in the custody of the City of Birmingham" is merely a legal conclusion for which Plaintiff's Second Amended Complaint provides no support. (Doc. # 74 at ¶ 15). Plaintiff does not allege that (1) the State coerced or encouraged Dr. Callahan's actions, (2) in treating Plaintiff at Grandview, Dr. Callahan performed a function that is traditionally the exclusive prerogative of the State, or (3) a close nexus between the State and Dr. Callahan's actions existed. In his response to Defendant Callahan's motion to dismiss, Plaintiff states that "the evidence clearly shows that Defendant Callahan was Plaintiff's treating physician on or around [January 5, 2015 and January 6, 2015]" and cites *Carswell v. Bay County*, 854 F.2d 454

(11th Cir. 1988). (Doc. # 91 at p. 3). In *Carswell*, the Eleventh Circuit held that a private physician who was under contract with a county to provide medical services to jail inmates acted under color of state law when treating these inmates. *See* 854 F.2d at 456-57. However, Plaintiff has not alleged that Dr. Callahan was under contract with the City of Birmingham to provide medical services to its jail detainees. Accordingly, the ruling in *Carswell*, 854 F.2d 454, provides no support for Plaintiff's conclusory assertion that Dr. Callahan was a state actor.

Furthermore, the Eleventh Circuit has suggested that non-contract private medical providers -- who are not affiliated with a state institution -- are not state actors.[6] *See Harvey*, 949 F.2d at 1132, 1332 n.14 (contrasting "private physicians unaffiliated with a state institution" (not state actors) with physicians under contract to provide medical services to prisons (state actors)). Because Plaintiff has failed to plausibly assert that Dr. Callahan was a state actor, Plaintiff has no viable § 1983 claim against Dr. Callahan. *See West*, 487 U.S. at 48; *see also, e.g.*, *Littleton v. Miller*, No. 515-cv-01076-RDP-HGD, 2017 WL 220338, at *2-3 (N.D. Ala. Jan. 19, 2017) (dismissing private nurses from a § 1983 cause of action because the plaintiff did not plausibly allege that the nurses were state actors); *Key v. Curry*, No. 5:13-cv-134-MTT, 2014 WL 1057270, at *3-4 (M.D. Ga. Mar. 19, 2014) (dismissing § 1983 claims against a physician and a social worker from a private nursing home because the plaintiff failed to allege that these defendants were state actors); *Allen v. Se. Georgia Health Sys.*, No. cv-208-146, 2009 WL 982102, at *5 (S.D. Ga. Apr. 10, 2009) (dismissing § 1983 claims against a medical doctor because the plaintiff failed to plausibly assert that the doctor was a state actor).

---

[6] The majority of federal courts that have ruled on this issue agree. *See, e.g.*, *Katorie v. Dunham*, 108 F. App'x. 694, 698-99 (3rd Cir. 2004); *Styles v. McGinnis*, 28 F. App'x. 362, 364 (6th Cir. 2001); *Pino v. Higgs*, 75 F.3d 1461, 1466-67 (10th Cir. 1996); *Sykes v. McPhillips*, 412 F. Supp. 2d 197, 202-04 (N.D.N.Y. 2006); *Nunez v. Horn*, 72 F. Supp. 2d 24, 27 (N.D.N.Y. 1999). *But see Conner v. Donnelly*, 42 F.3d 220, 223 (4th Cir. 1994); *Anglin v. City of Aspen, Colo.*, 552 F. Supp. 2d 1229, 1242-44 (D.Colo. 2008).

### 2. Plaintiff Has Not Plausibly Alleged Deliberate Indifference

Plaintiff's deliberate indifference claim against Dr. Callahan is also due to be dismissed for an alternative reason. Deliberate indifference to medical needs is a violation of a detainee's constitutional rights.[7] *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). The Eleventh Circuit has "consistently held that knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference." *Adams v. Poag*, 61 F.3d 1537, 1543-44 (11th Cir. 1995) (citing *Carswell*, 854 F.2d at 457, and *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985)). However, not every claim of inadequate medical treatment states a cognizable claim under the federal constitution. "Medical treatment [is deliberately indifferent] only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citation omitted). To establish that a medical provider or jail official was deliberately indifferent to a detainee's serious medical need, a plaintiff must meet both an objective and a subjective standard of proof. *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999).

With respect to the objective component, a plaintiff is required to show both (1) an objectively serious medical need that, if left unattended, poses a substantial risk of serious harm, and (2) that the defendant's response to that need was poor enough to constitute an unnecessary and wanton infliction of pain. *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). An objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity

---

[7] Ball was a pretrial detainee at the Birmingham City Jail when Dr. Callahan treated him. (*See* Doc. # 74 at ¶ 28-29). Deliberate indifference claims on behalf of pretrial detainees are brought under the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment. *Goebert*, 510 F.3d at 1326. Nevertheless, the same legal standards are applied to deliberate indifference claims brought under either constitutional provision. *Id.*

for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal quotation marks omitted). Even when treatment is ultimately provided, deliberate indifference may be "inferred from an unexplained delay in treating a known or obvious serious medical condition." *Harris v. Coweta Cnty., Ga.*, 21 F.3d 388, 394 (11th Cir. 1994).

To establish the subjective component, a plaintiff must establish (1) subjective knowledge of a risk of serious harm, (2) disregard of that risk, and (3) that the conduct committed by the defendant was more than merely negligent. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). Additionally, as with any tort-like claim, a deliberate-indifference plaintiff must show that an injury was caused by the defendant's wrongful conduct. *See Hale v. Tallapoosa Cnty., Ala.*, 50 F.3d 1579, 1582 (11th Cir. 1995). It is not enough to show that the care provided was less than optimal, or that a different course of treatment might have been preferable. The required subjective elements of a deliberate indifference claim ensure that accidental inadequacy, negligent diagnosis or treatment, and even medical malpractice are not actionable under § 1983. *Taylor*, 221 F.3d at 1258. The requisite standard of mind, deliberate indifference, has been compared to the mental state of criminal recklessness. *See Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994). "Ultimately, there are thus four requirements: an objectively serious need, an objectively insufficient response to that need, a subjective awareness of facts signaling the need, and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258.

In this case, Plaintiff alleges that Dr. Callahan was deliberately indifferent to his medical needs because she was advised of tests indicating that Plaintiff had "a significant medical condition" (a low blood count) but chose not to take any further action regarding these results. (Doc. # 74 at ¶¶ 30, 47). As stated, this claim is devoid of any facts illustrating that Plaintiff's

14

low blood count -- if left unattended -- posed a substantial risk of serious harm, that Dr. Callahan's response to Plaintiff's test results constituted an unnecessary and wanton infliction of pain upon Plaintiff, that Dr. Callahan's medical treatment of Plaintiff was more than mere negligence, or that Dr. Callahan's inaction caused Plaintiff any injury.[8] Therefore, Plaintiff's Second Amended Complaint not only fails to adequately plead that Dr. Callahan was a state actor but also fails to plausibly allege a deliberate indifference claim against Dr. Callahan. *See Taylor*, 221 F.3d at 1258. At most, Plaintiff's Second Amended Complaint may amount to a medical malpractice claim against Dr. Callahan;[9] however, a medical malpractice claim is not actionable under § 1983. *See id.*

B. **The Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's State Law Claim against Defendant Callahan**

Finally, Plaintiff's Second Amended Complaint alleges that Dr. Callahan breached her duty to provide Plaintiff appropriate medical care. (Doc. # 74 at ¶¶ 53-55). The court may decline to exercise supplemental jurisdiction over state law claims where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Having found that Plaintiff misjoined Dr. Callahan in this action and that Plaintiff has not adequately pled his federal claim against Dr. Callahan, the court declines to exercise supplemental jurisdiction over Plaintiff's state law claim against Dr. Callahan. Accordingly, Plaintiff's medical malpractice claim is due to be remanded to the Circuit Court of Montgomery County.

---

[8] Plaintiff avers that, at some later (and undefined) date, a colonoscopy revealed that he was bleeding internally and surgery was required. (*Id.* at ¶ 33). Assuming Plaintiff intended to plead that his internal bleeding and surgery were his injuries, Plaintiff has failed to make any showing that Dr. Callahan's alleged failure to take action regarding his January 6, 2015 test results *caused* (1) his internal bleeding, (2) his bleeding to be unnecessarily prolonged, (3) surgery to be necessary, or (4) Plaintiff to face any harm.

[9] As noted below, the court declines jurisdiction over the Plaintiff's medical malpractice claim and, therefore, does not discuss the merits of this claim.

## VI. Analysis of Defendant Fowler's Motion to Dismiss

In requesting dismissal of the 42 U.S.C. § 1983 claim against Defendant Fowler, Defendant Fowler argues that Plaintiff fails to state a claim upon which relief can be granted and that Plaintiff's claim against her is time-barred. (Doc. # 106 at p. 4). The court addresses each of Defendant Fowler's arguments, in turn.

### A. Plaintiff Has Adequately Pled a § 1983 Claim

As explained above, to state a claim for relief under § 1983, a plaintiff must allege that the defendant (1) acted under color of state law (2) to deprive the plaintiff of a right secured under the United States Constitution or federal law. *Richardson*, 598 F.3d at 737. Defendant Fowler's Motion to Dismiss does not contest that she was a state actor. (*See* Doc. # 106). Rather, Defendant Fowler seeks dismissal asserting that Plaintiff did not have an underlying right to medical treatment on May 13, 2014. (*See id.* at 4-8). Accordingly, the court limits its discussion to this legal argument. *See Lewis v. Asplundh Tree Expert Co.*, 305 F. App'x 623, 627 (11th Cir. 2008) (noting that the district court generally must limit its consideration of a Rule 12(b)(6) motion to dismiss to the pleadings and exhibits attached to the motion).

Although the U.S. Constitution does not provide a general right to medical care and services, the existence of a special relationship between an individual and a state may trigger a constitutional duty on the part of the state to provide certain medical services. *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1034 (11th Cir. 1987). A governmental entity has a special relationship with a pretrial detainee and, therefore, has a constitutional duty to provide a pretrial detainee certain medical treatment under the Fourteenth Amendment. *See id.* at 1034-35; *see also City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 244-45 (1983).

Plaintiff alleges that, "on or around 5-13-14 thru Feb. 2015," he went to Cooper Green for a scheduled pain management appointment and that, upon arrival to Cooper Green,

16

Defendant Fowler "denied him access to [Cooper Green's] services, Doctors, examinations, assessment, and any and all opportunity to receive treatment." (Doc. # 97 at p. 2). The government did not have a constitutional obligation to provide Plaintiff access to necessary medical treatment until Plaintiff became a pretrial detainee on November 19, 2014. *See Wideman*, 826 F.2d at 1034-35. Assuming Plaintiff visited Cooper Green and encountered Defendant Fowler's alleged conduct at some point after November 19, 2014 (which fits into Plaintiff's May 2014 through February 2015 timeframe), Plaintiff has adequately alleged that, as a pretrial detainee, he was guaranteed a constitutional right to certain medical treatment. *See id.* Based on a liberal construction of Plaintiff's *pro se* pleadings, the court cannot find (at least at this time) that Plaintiff had no constitutional right to medical treatment because it is unclear whether Plaintiff was a pretrial detainee when Defendant Fowler allegedly denied Plaintiff access to medical treatment at Cooper Green.

**B.     It Is Unclear Whether Plaintiff's Claim Is Time-Barred**

"[T]he two-year limitations period of Ala. Code § 6–2–38(*l*) applies to section 1983 actions in Alabama." *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989). Plaintiff filed this action on May 20, 2016. (Docs. # 1-1, 1-4, 1-5, 1-6, 1-7, 1-8, 1-9). Defendant Fowler argues that her alleged conduct occurred on May 13, 2014, more than two years after Plaintiff commenced this action. (Doc. # 106 at p. 4). However, Plaintiff's Third Amendment to Complaint does not clearly state the date that the event giving rise to his claim against Defendant Fowler occurred.[10] (Doc. # 74). Without this information, the court cannot find as a matter of law that this claim is time-barred.

---

[10] *See supra* note 2.

## VII. Conclusion

After careful review, the court concludes that Defendant Callahan's Motion to Dismiss Second Amended Complaint (Doc. # 78) is due to be granted in part and denied in part. The § 1983 against Defendant Callahan is due to be dismissed with prejudice. For the reasons explained above, Defendant Fowler's Motion to Dismiss (Doc. # 106) is due to be denied without prejudice.

Although Plaintiff never opposed Defendant Callahan's Motion to Dismiss Third Amended Complaint (Doc. # 108), the court has independently reviewed the merits of this Motion (Doc. # 108) and found that Plaintiff's Third Amendment to Complaint makes no allegations against Defendant Callahan. (*See* Doc. # 97). As such, that Motion (Doc. # 108) is due to be granted, and Defendant Callahan is dismissed without prejudice as a defendant to Plaintiff's Third Amendment to Complaint (Doc. # 97).

On the court's own motion, and under Federal Rule of Civil Procedure Rule 21, the court finds that this case is due to be severed into two separate actions. Accordingly, the remaining claim against Defendant Callahan is due to be severed into a separate action and remanded to the Circuit Court of Montgomery County. An order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this October 17, 2017.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE